

ENTERED
01/16/2021

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| UNITED REFINING COMPANY | § | CASE NO: 83-03935 |
|     Debtor | § | |
| | § | CHAPTER  11 |

### Memorandum Decision and Order on Debtor's Motion for Determination of Dischargeability of Claim of Robert W. Dorrion

      In 1983, United Refining Company and its affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas. The Bankruptcy Court entered the Order Confirming Debtors' Sixth Amended Consolidated Plan of Reorganization in 1988. The Confirmation Order discharged all prepetition claims against the Debtors and enjoined any effort to collect or recover on discharged claims. The Confirmation Order also stated that the Debtors provided proper notice to parties-in-interest. The chapter 11 cases closed in 1990.

      Twenty-eight years later, the Estate of Gerald W. Dorrion filed a wrongful death suit against United Refining and other defendants in a Pennsylvania county court. The Estate alleges that Dorrion was exposed to asbestos while working at a United Refining refinery in the 1960s, was diagnosed with mesothelioma in 2016, and passed away in 2017. The Estate pursued litigation against United Refining in Pennsylvania for about two years without ever confirming whether its claim was discharged. In July 2020, United Refining filed a motion with this Court seeking to reopen the bankruptcy case under 11 U.S.C. § 350(b), which was granted in September 2020.

      The Court must now decide whether the Estate's wrongful death claim against United Refining was discharged. The official record for the Debtors' cases had been stored at the National Archives and Records Administration, but it was destroyed in the ordinary course in late 2020. So there is no official docket (hard copy or electronic), no record of the entries in the docket, no affidavits of service, no disclosure statement, and no schedules of assets and liabilities. There is also no evidence from Dorrion himself about what he knew about United Refining's bankruptcy case, including if he received any documents or notices about the case. Instead, the only court documents admitted into the record in this proceeding were a copy of the Plan, the Confirmation Order, and a few miscellaneous post-confirmation orders retained by United Refining.

Based on the record and applicable law, the Court rules that the Estate's claim against United Refining was discharged and the Confirmation Order enjoins the Estate from any act to collect or recover on the discharged claim.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The parties' express and implied consent also provides the Court constitutional authority to enter a final judgment under *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1944–47 (2015) and *In re Delta Produce, L.P.*, 845 F.3d 609, 617 (5th Cir. 2016). The Court also retained jurisdiction under Section 1142 of the Bankruptcy Code and Article XI of the Plan, which included: (i) determining the validity and amount of any disputed, unliquidated, and contingent Claims; (ii) the allowance or disallowance of all Claims provided for by the Plan; (iii) the interpretation and enforcement of the provisions of the Plan, and determining all controversies and disputes that may arise with the enforcement, interpretation or consummation of the Plan; and (iv) the entry of any orders, including injunctions, as may be necessary to enforce the title, rights and powers of the Debtors under the Plan and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may find necessary. Plan § 11.2(b), (f), (i), (j).

## Background

From 1960 to 1963, Dorrion worked at United Refining's refinery in Warren, Pennsylvania. He was diagnosed with mesothelioma in 2016 and passed away in 2017. In 2018, the Estate filed a wrongful death suit against United Refining and several other defendants in the Philadelphia County Court of Common Pleas. The Estate alleges that Dorrion was exposed to asbestos while working at the refinery without United Refining providing proper precautions and warnings to him.

In 1988, the Bankruptcy Court confirmed the Plan and entered the Confirmation Order. The Plan and the Confirmation Order discharged all prepetition claims and debts against the Debtors. Plan § 14.1; Confirmation Order ¶ 6, at 9.

General unsecured creditors were classified under Class VII of the Plan.[1] In satisfaction of Class VII claims, the Debtors, among other things, had to pay over $20 million into a trust and a post-confirmation trustee was appointed. Allowed Class VII Claimholders received pro-rata distribution based on a ratio of their "Prepetition Claim" against all allowed claims. Plan § 5.1.

---

[1] Capitalized terms not defined in this Memorandum Decision and Order have the meanings ascribed in the Plan.

The Confirmation Order also states the following:

- The Debtors complied with the applicable notice provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the Court, and notice of the confirmation hearing was reasonable and appropriate. Confirmation Order ¶ 1, at 8.
- Section 5.1 of the Plan was modified to conform to the terms of a settlement agreement between the Debtors and the United States Department of Energy and to compensate for any disadvantage to Class VII Creditors resulting therefrom. *Id.* ¶ 10(a), at 4.
- All property of the estate vests in the Debtors free and clear of all claims and interests of the Debtors' creditors. *Id.* ¶ 7, at 10.
- Any judgment at any time rendered against the Debtors related to a discharged debt is rendered void. *Id.* ¶ 8, at 10–11.
- The commencement or continuation of any action or any act to collect or recover on a prepetition debt is discharged and forever enjoined. *Id.* ¶ 9, at 11.
- The Plan binds all creditors, whether or not a claim is impaired under the Plan or whether a creditor voted on the Plan. *Id.* ¶ 19, at 13.

### **Does the Estate Have a Prepetition Bankruptcy Claim?**

The first step in analyzing whether the Estate's claim was discharged is to determine whether it is a prepetition bankruptcy claim. The Plan and the Confirmation Order state that references to sections of the Bankruptcy Code are as they existed on September 16, 1983.[2]

Interpreting the Bankruptcy Code begins with analyzing the text. *Ransom v. FIA Card Servs., N. A.*, 562 U.S. 61, 69 (2011) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). In 1983, the Bankruptcy Code defined "claim" under Section 101(4)(A) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(4)(A).[3] The legislative history provides that "[b]y this broadest possible definition . . . all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R. Rep. No. 95-595, at 309 (1977); *see also Ohio v. Kovacs*, 469 U.S. 274, 279 (1985) (broad interpretation of "claim"); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275 (5th Cir. 1994) (same).

---

[2] *See* Plan at 5 (Definition of "Code"); Confirmation Order at 2 n.1.

[3] The definition of claim has not changed since 1978. It is currently listed under Section 101(5).

3

This broad interpretation of a "claim" under the Bankruptcy Code was a major change from the treatment of claims under the prior Bankruptcy Act of 1898. The Bankruptcy Act did not define "claim." Instead, Section 103 of the Act limited the types of debts that could be proved and allowed against a debtor to, among others:

- debts "founded upon" a fixed liability owed on the petition date,
- provable debts reduced to judgment after the petition date and before consideration of the debtor's application for a discharge, and
- the right to recover damages in a negligence action started before and pending on the petition date.

Bankruptcy Act § 63(a) (1898), 11 U.S.C. § 103(a).

Contingent or unliquidated claims that were not either liquidated or estimated during a case were considered not provable against the estate. *Id.* § 103(d). As a result, contingent tort claims based on unknown injuries during a bankruptcy case were not allowed against the estate and not discharged. *See* 3A, *Collier on Bankruptcy* ¶ 63.30, at 1912 (14th ed. 1975) (contingent claims required liquidation or estimation to be provable under § 63); Margaret I. Lyle, Note, *Mass Tort Claims and the Corporate Tortfeasor: Bankruptcy Reorganization and Legislative Compensation Versus the Common-Law Tort System*, 61 Tex. L. Rev. 1297, 1308 (1983) (same).

The Bankruptcy Code removed the concept of provability and incorporated the current definition of "claim," which focuses on a right to payment, even if on the petition date it is contingent, unliquidated, disputed, or unmatured. The Bankruptcy Code also defines a creditor as an entity[4] that has a claim against a debtor that arose before the petition date. 11 U.S.C. § 101(9), currently § 101(10).

Asbestos exposure claims are inherently complicated in bankruptcy because the exposure often occurs prepetition but the injury manifests itself years after a chapter 11 plan effective date. In the 1980s, the Fifth Circuit had not adopted a test to determine whether contingent future tort claims were prepetition bankruptcy claims. Over time courts across the country formulated the accrual test, the conduct test, the prepetition relationship test, and the fair contemplation test.

Under the accrual test, a bankruptcy claim arises when the cause of action accrues under non-bankruptcy law. *See, e.g., Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332, 337 (3d Cir. 1984). No other circuit court ever adopted the accrual test. The Third Circuit eventually overturned *Frenville* in *JELD–WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 120–21 (3d

---

[4] The Bankruptcy Code defines "entity" to include individuals. 11 U.S.C. § 101(14) (1983), and currently at § 101(15).

4

Cir. 2010), but the accrual test still applies in the Third Circuit for plans confirmed before 2010. *Wright v. Owens Corning*, 679 F.3d 101, 109 (3d Cir. 2012).[5]

Under the conduct test, a bankruptcy claim arises if the conduct prompting the liability occurred prepetition. *See, e.g.*, *Grady v. A.H. Robins Co. (In re A.H. Robins Co.)*, 839 F.2d 198, 202–03 (4th Cir. 1988). And under the prepetition relationship test, there must exist "some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant." *See In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994). The Fifth Circuit later applied the prepetition relationship test in *Lemelle*, *In re Digicon, Inc.*, 2003 WL 21418127, at *4 (5th Cir. June 11, 2003), and *Egleston v. Egleston (In re Egleston)*, 448 F.3d 803, 813–14 (5th Cir. 2006).

Finally, *In re Nat'l Gypsum Co.*, 139 B.R. 397, 406–08 (N.D. Tex. 1992) applied a fair contemplation test, which adds to the prepetition relationship test a requirement that the existence of a claim must have been within the "fair contemplation" of the parties at the time of the bankruptcy. This test was never adopted by the Fifth Circuit. *See La. Dep't of Env't Quality v. Crystal Oil Co. (In re Crystal Oil Co.)*, 158 F.3d 291, 296 n.1 (5th Cir. 1998) (noting the Fifth Circuit has not adopted the fair contemplation test).[6]

For cases involving claimants with prepetition exposure to asbestos, courts have generally applied the prepetition relationship test and found claimants held a bankruptcy claim even when the injury manifested postpetition. *See, e.g.*, *In re Johns-Manville Corp.*, 552 B.R. 221, 237 (Bankr. S.D.N.Y. 2016); *In re Quigley Co.*, 383 B.R. 19, 27 (Bankr. S.D.N.Y. 2008) ("If the Asbestos . . . Claimant was exposed to asbestos before the . . . petition date, he or she holds a 'claim.'"); *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 424 (Bankr. D. Md. 2007) ("A claim arises upon exposure, not manifestation.") (citation omitted); *In re Placid Oil Co.*, 463 B.R. 803, 814–15 (Bankr. N.D. Tex. 2012).

---

[5] The Estate appears to have pursued litigation against United Refining in the Pennsylvania court without confirming whether the claim was discharged, in part, relying on the accrual test. *See* Opposition to Motion to Determine Dischargeability, Docket No. 13, at 8–10; *see also* Opposition to Motion to Reopen Case, Docket No. 3, at 6–10.

[6] In 1980, a Southern District of Texas bankruptcy court in a non-tort case also defined a contingent debt as "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *In re All Media Props.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980). This definition has never been expressly adopted by the Fifth Circuit. *See, e.g.*, *In re Crystal Oil Co.*, 158 F.3d at 296 n.1. In any case, as discussed *infra* fn. 7, the Estate's claim would still be a prepetition claim under this definition.

The Estate argues that it does not have a prepetition claim based mainly on the accrual and fair contemplation tests. *See* Opposition to Motion to Determine Dischargeability, Docket No. 13, at 8–13. Under the accrual test, the Estate's claim would not arise prepetition because it accrued under applicable state law postconfirmation. The Estate also believes that Dorrion's asbestos exposure in the 1960's and resulting mesothelioma diagnosis in 2016 was not within the fair contemplation of the parties at the time of the bankruptcy cases. These tests, however, were never adopted by the Fifth Circuit and this Court will not do so either because they do not strictly follow the Bankruptcy Code's definition of a claim.[7]

Dorrion worked at a United Refining factory and was exposed to asbestos prepetition. Although Dorrion was diagnosed with mesothelioma in 2016 and may not have been aware of his condition until that time, the asbestos exposure that gave rise to the claim, and a contingent right to payment, occurred prepetition.

The Bankruptcy Code's definition of "claim" includes contingent claims. "Contingent," however, is not defined. So the Court must look to its ordinary meaning. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). The meaning of contingent has not changed from when the Bankruptcy Code was enacted to now. It means "of possible occurrence" and "likely but not certain to happen." *Contingent*, Webster's Third New Int'l Dictionary (1976). Black's Law Dictionary also defined contingent as "[p]ossible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable." *Contingent*, Black's Law Dictionary (5th ed. 1979).[8] Thus, a contingent claim includes asbestos related claims like the Estate's, where the exposure occurs prepetition and the injury manifests postpetition. And this includes claims that do not accrue under state law because they are still prepetition claims under the Bankruptcy Code. *See, e.g., In re Phillips*, 175 B.R. 901, 907 (Bankr. E.D. Tex. 1994); *In re Manville Forest Prods. Corp.*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998).[9]

Finally, the Estate also argues that cases like the Fifth Circuit *Lemelle* decision show that, before safeguards for future claimants under Section 524(g) of

---

[7] The Estate's claim is still a prepetition claim even under the fair contemplation test. Dorrion was a United Refining employee and the Debtors were aware of, and addressed, many environmental issues and claims under the Plan. *See, e.g.*, Plan § 11.4 and Class IX; Confirmation Order ¶ 10, at 4.

[8] A contingent claim was defined as "[o]ne which has not accrued and which is dependent on some future event that may never happen." *Contingent Claim*, Black's Law Dictionary (5th ed. 1979).

[9] The Estate's reliance on cases like *In re Amatex Corp.*, 30 B.R. 309 (Bankr. E.D. Pa. 1983), which did not recognize a claim before the manifestation of an injury, are rejected.

6

the Bankruptcy Code were enacted in 1994,[10] courts held that unknown future claimants did not hold bankruptcy claims. *See* Opposition, Docket No. 13, at 11–12. The Court disagrees. *Lemelle* involved a wrongful death action arising from a mobile home fire over two years after plan confirmation. 18 F.3d at 1270–71. The Fifth Circuit stated that the debtor's design and manufacture of the mobile home led to no prepetition tortious consequence until the postconfirmation fire, and there was no evidence in the record showing when the plaintiff acquired the mobile home or from whom they acquired it. *Id.* at 1277. The court applied the prepetition relationship test but also held that where the injury and the manifestation of the injury occurred simultaneously, there must, at a minimum, be evidence of privity between the debtor and the plaintiff. *Id.* at 1277–78. This case is distinguishable on its facts because Dorrion's alleged asbestos exposure while working for United Refining occurred prepetition.

In conclusion, the Estate holds a prepetition bankruptcy claim under the plain language of the Bankruptcy Code. This also tracks later cases properly construing claimants with prepetition asbestos exposure as holding prepetition bankruptcy claims. *See, e.g.*, *In re Placid Oil Co.*, 463 B.R. at 814–15; *In re Johns-Manville Corp.*, 552 B.R. at 237; *In re Quigley Co.*, 383 B.R. at 27.

Because the Estate holds a prepetition claim, the Court must now determine whether the claim was discharged. If discharged, the Estate may not proceed litigation in the Pennsylvania court against United Refining. If not discharged, the Estate may file a late proof of claim and receive a distribution as a Class VII Creditor under the Plan. *See In re Emons Indus., Inc.*, 220 B.R. 182, 192–93 (Bankr. S.D.N.Y. 1998); *In re Pettibone Corp.*, 151 B.R. 166, 174 (Bankr. N.D. Ill. 1993).

### Was the Estate's Claim Discharged?

United Refining asserts that Sections 1141 and 524 of the Bankruptcy Code and the Confirmation Order discharged the wrongful death claim and enjoin the Estate from litigating it before the Pennsylvania court.

Section 1141(d)(1) of the Bankruptcy Code provides that a confirmed chapter 11 plan discharges a debtor from any debt[11] that arose before plan confirmation, regardless if a creditor filed a proof of claim, a claim was allowed under the Bankruptcy Code, or a creditor voted to accept the plan. 11 U.S.C. § 1141(d)(1)(A).

---

[10] Congress enacted Section 524(g) in the Bankruptcy Reform Act of 1994. Section 524(g) permits "channeling injunctions" that supplement the injunctive effect of a discharge in cases involving asbestos or asbestos-containing products.

[11] The Bankruptcy Code defines "debt" as "liability on a claim." In 1983, "debt" was listed under 11 U.S.C. § 101(11). It is now under Section 101(12). As stated above, the Estate's claim is a bankruptcy "claim." Thus, liability on the Estate's claim is a dischargeable debt under Section 1141(d)(1).

7

The effect of a discharge is found under Section 524(a) of the Bankruptcy Code. Section 524(a)(2) states that a discharge "operates as an injunction against the commencement or continuation of an action" or any act to recover against discharged claims. *Id.* § 524(a)(2). The legislative history of Section 524 explains the broad scope of this injunction:

> The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.
>
> . . . [Section 524] is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that.

H.R. Rep. No. 95-595, at 365–66 (1977).

The Confirmation Order tracks the discharge language under Sections 1141 and 524 of the Bankruptcy Code. *See* Confirmation Order ¶ 6, at 9–10, ¶ 9, at 11, ¶¶ 18–19, at 13. It also states that the Debtors complied with the applicable notice provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of the Court, and that notice of the confirmation hearing was reasonable and appropriate. *Id.* ¶ 1, at 8. Thus, according to United Refining, because the Confirmation Order shows that parties-in-interest received proper notice, and there is no evidence to the contrary, prepetition claims, including the Estate's claim, were discharged.

The Estate disagrees and asserts that Dorrion was a future unknown creditor during the bankruptcy cases and there is no evidence that Dorrion was provided with notice about the bankruptcy cases. *See* Opposition, Docket No. 13, at 24.

There is no doubt that courts must consider fundamental principles of due process in assessing whether a claim was discharged. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The form of required notice depends on whether a party is a known or unknown creditor. A known creditor is one who is "reasonably ascertainable" by the debtor. *See In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014). An unknown creditor is, by contrast, a creditor with claims that "do not in due course of business come to knowledge [of the debtor]." *Id.* at 156 (quoting *Mullane*, 339 U.S. at 317). A known creditor is constitutionally guaranteed service that is "reasonably calculated" to provide actual notice. *Id.* at 154 (citing *Mullane*, 339 U.S. at 314). And

8

publication-based constructive notice is sufficient for unknown creditors. *See id.* at 155. Proper notice to a creditor covers claims for manifested and unmanifested injuries. *See generally Placid Oil*, 753 F.3d 151; *see also In re AMPAM Power Plumbing, L.P.*, 520 B.R. 553, 560 (Bankr. W.D Tex. 2014) (stating that proper notice covers even unknown injury at the time of notice).

Analyzing dischargeability and related due process considerations here is complicated because of the lack of meaningful evidence. The parties agree that Dorrion worked at a United Refining refinery in the 1960s and was diagnosed with mesothelioma in 2016. The Estate believes that Dorrion is excepted from the discharge because he was an unknown creditor and there is no evidence of publication notice.

Based on the documents admitted into evidence, it appears that Dorrion may have been an unknown creditor. But without an official record or actual evidence about what happened during the cases, it is impossible to accurately classify him as a known or unknown creditor.[12] It is also impossible to know whether Dorrion received notice about the cases.[13]

Section 1141 of the Bankruptcy Code provides that creditors are bound by the terms of a confirmed plan. 11 U.S.C. § 1141(a). And a bankruptcy court confirmation order is binding and final and has the weight of a final judgment for res judicata purposes. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992). Thus, Section 1141 confirms the finality of chapter 11 plans, which allows parties to rely on its terms forever. *See, e.g.*, *Integon Life Ins. Corp. v. Mableton–Booper Assocs. (In re Mableton–Booper Assocs.),* 127 B.R. 941, 943 (Bankr. N.D. Ga. 1991) (reasoning that Section 1141 imposes an "important element of finality in Chapter 11 proceedings, allowing parties to rely on the provisions of a confirmed reorganization plan."); *In re Adams*, 218 B.R. 597, 600 (Bankr. D. Kan. 1998) ("The terms of a confirmed plan usually represent the results of negotiations between the debtor and its creditors, and the parties should be able to rely on the finality of those terms."). The Bankruptcy Code also imposes no requirement on chapter 11 debtors to maintain copies of the official court docket to back up the National Archives.

---

[12] The Estate offered deposition testimony from two individuals about Dorrion working at United Refining in the 1960s. But there is no evidence about anything Dorrion knew about the bankruptcy cases.

[13] United Refining tries to establish publication notice through newspaper articles reporting about the status of the bankruptcy cases. *See, e.g.*, United Refining Exhibits G–P, Docket No. 14. These articles provide generalized news coverage about the start of the cases and efforts to exit bankruptcy. There is no evidence that Dorrion reviewed any of the articles. The articles would not satisfy due process to Dorrion.

Based on these facts, the Court gives full weight to the findings of fact in the Confirmation Order because it is the only evidence of what occurred during the cases. The Confirmation Order satisfies United Refining's burden of proof of notice to Dorrion and the dischargeability of the Estate's claim. The Confirmation Order is prima facie evidence that prepetition claims were discharged and that proper notice was provided to parties-in-interest. Even presuming that Dorrion is an unknown creditor, with no official record (hard copy or electronic) or evidence from Dorrion himself for the Court to rule differently, Judge Wheless's findings in the Confirmation Order that notice to parties-in-interest was proper is uncontroverted and stands.

The Estate's argument that the lack of a trust fund in the Plan for future unknown claimants like in the Johns-Manville case shows that unknown creditors were not contemplated during the case is misplaced. There is no evidence United Refining should have established a dedicated trust for future claims. Johns-Manville, for example, knew about asbestos exposure to numerous people and filed chapter 11 to resolve current and future unknown claims. *In re Johns-Manville Corp.*, 36 B.R. 743, 746 (Bankr. S.D.N.Y. 1984). Furthermore, as explained by the *In re Texaco* bankruptcy court, claimants in mass-tort cases typically have no contact with those companies, may not know the source of the product that caused the harm, and those companies would likely have no way to identify every person who used or was exposed to their products. *In re Texaco Inc.*, 182 B.R. 937, 956–57 (Bankr. S.D.N.Y. 1995) (discussing asbestos and Dalkon-Shield related bankruptcy cases).

This, however, is not a John-Mansville mass tort type of case, and the lack of a dedicated trust for future claimants in the Plan does not mean United Refining did not consider future environmental claims. For example, United Refining resolved environmental claims under consent orders with the Department of Environmental Resources of the Commonwealth of Pennsylvania, the EPA, and other governmental regulatory agencies that enforce environmental laws (Class IX of the Plan) and provided that jurisdiction over certain "Disputed Claims" could be transferred to the U.S. Bankruptcy Court for the Western District of Pennsylvania. Plan § 11.4. Class VII (which the Estate's claim would fall under) also had a trustee to administer payments to holders of postconfirmation allowed claims. Plan § 5.1(c).[14]

---

[14] Finally, the Estate's reference to lack of a channeling injunction mechanism in the Confirmation Order is not relevant. As noted above, Congress enacted Section 524(g) in the Bankruptcy Reform Act of 1994, which was several years after entry of the Confirmation Order.

One of the main purposes of bankruptcy is to provide debtors with a "fresh start in life." *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918); *In re Capco Energy, Inc.*, 472 B.R. 378, 380–81 (Bankr. S.D. Tex. 2012). A plan confirmation order and Sections 524 and 1141 of the Bankruptcy Code are essential elements of that fresh start. *See, e.g.*, *In re WCI Cmtys., Inc.*, 2012 WL 1981713, at *8 (Bankr. D. Del. June 1, 2012) ("It is essential that an order regarding the complex give-and-take of bankruptcy negotiations be enforced, and that the debtors and third-parties enjoy the rights and protections ordered by the Court."). The Court carefully weighed the evidence, applicable law, and bankruptcy policy of a debtor's fresh start with constitutional due process considerations. The Confirmation Order findings about notice to creditors is uncontroverted by the evidence admitted in the record for this proceeding and satisfies any burden about the Debtors providing notice. The Estate's claim is discharged as to United Refining and its Debtor affiliates under the Confirmation Order.[15]

Thus, for the reasons stated above it is ORDERED that:

1. United Refining's Motion for Determination of Dischargeability of Claim of Robert W. Dorrion (Docket No. 12) is GRANTED.

2. The Estate's claims and causes of action (the "Claims") against the Debtors alleged in the civil action filed in 2018, pending in the Philadelphia County Court of Common Pleas, Civil Trial Division (the "State Court Lawsuit"), were discharged.

3. The Estate is enjoined from pursuing the Claims, or any related claims arising from the same facts, events, or occurrences giving rise to the State Court Lawsuit, against the Debtors.

4. This Court retains jurisdiction to enforce or interpret the terms of this Order.

Signed: January 16, 2021

_____
Christopher M. Lopez
United States Bankruptcy Judge

---

[15] Any Estate arguments not specifically addressed in this Memorandum Decision and Order are also rejected for the reasons stated herein.

11