United States District Court
Southern District of Texas

**ENTERED**

August 25, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED REFINING COMPANY, | § § | CIVIL ACTION NO 4:21-cv-00355 |
| Debtor, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ROBERT W. DORRION, | § | |
| Appellant. | § | |

OPINION AND ORDER
AFFIRMING BANKRUPTCY COURT

Appellant Robert W. Dorrion is executor of the estate of Gerald W. Dorrion. He appeals from an order of the United States Bankruptcy Court determining that a wrongful-death claim he brought against Appellee United Refining Company was discharged in bankruptcy.

The decision of the bankruptcy court is affirmed but subject to limited remand for consideration whether an argument by Appellant was forfeited for failure to raise it before the bankruptcy court—and if not, to decide that issue as noted below.

1. Background

Gerald W. Dorrion worked for United Refining Company from 1960 to 1963 and was allegedly exposed to asbestos at one of its petroleum refineries in Pennsylvania. He will be referred to here as *the Decedent* because, unfortunately, he was diagnosed with mesothelioma—an aggressive form of cancer caused by asbestos exposure—in 2016 and died the following year.

Robert W. Dorrion served as executor of the Decedent's estate and will be referred to here as such. His familial

relationship with the Decedent, if any, isn't clear from the record. Regardless, in 2018, the Executor brought a wrongful-death action against United Refining in Pennsylvania state court.

In 1983, United Refining had filed for Chapter 11 bankruptcy in the Southern District of Texas. It submitted its sixth amended reorganization plan in 1988. See Dkt 8-3. As relevant to this appeal, the plan discharged "all Claims arising before the Confirmation Date." Id at 57. It thus barred creditors from asserting claims against United Refining "based upon any act or omission . . . that occurred prior to the Confirmation Date." Id at 58.

The bankruptcy court confirmed the plan by order in 1988. Dkt 8-4. That order likewise included language discharging United Refining of debts that arose before entry of the order. Dkt 8-4 at 9–10 ¶ 6. It stated further that the United Refining estate was free of all claims of creditors; any judgment of liability on a discharged claim would be null and void; and any action to recover on a prepetition debt was forever enjoined. Id at 10–11 ¶¶ 7–9. It also provided that the plan bound all creditors, regardless of whether they accepted the plan or whether the plan impaired their claims. Id at 13 ¶ 19. And it stated that United Refining "complied with the applicable notice provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Court, and notice of the hearing on confirmation was reasonable and appropriate." Id at 8 ¶ 1.

The bankruptcy case closed once the confirmed reorganization plan was consummated. The official record of the case was destroyed in the ordinary course of court business in 2020.

United Refining initially defended itself in Pennsylvania state court when the Executor asserted the subject wrongful-death claim in May 2018. But it later moved to reopen its bankruptcy case in July 2020. Dkt 2 at 11. The motion was granted. Id at 418. United Refining then moved for the bankruptcy court to determine whether the asbestos-related claim brought by the Executor was discharged by the 1988 confirmation order. Id at 424. As

just noted, the materials available for review on this motion were limited due to the destruction of the case-related files. Only the plan, confirmation order, and a few post-confirmation orders were (and are) available for consideration. Unavailable are items such as the entries in the docket, affidavits of service, the disclosure statement, any schedule of assets and liabilities, or any evidence from the Decedent himself about his notice of or knowledge about the bankruptcy case. See id at 880.

On the briefing and available materials, the bankruptcy court concluded that the claim was discharged. Judge Christopher M. Lopez first determined that the Executor had brought a prepetition claim within the meaning of the Bankruptcy Code. Id at 882–86. He then determined that the Bankruptcy Code and confirmation order discharged the wrongful-death claim and enjoined the Executor from further litigating the claim. Id at 886–90. With reliance upon the confirmation order's finding that notice was adequate, Judge Lopez also concluded that the Decedent had received adequate notice of the bankruptcy case. Id at 887–89.

The Executor appealed. Id at 891.

2.   Legal standard

Federal district courts have jurisdiction to hear appeals from final judgments or orders of the bankruptcy courts. 28 USC § 158(a)(1). A district court functions as an appellate court when reviewing the decision of a bankruptcy court as to a core proceeding, and so applies the same standard of review as would a federal appellate court. See *In re Webb*, 954 F2d 1102, 1103–04 (5th Cir 1992). Findings of fact are thus reviewed for clear error, while conclusions of law and mixed questions of fact and law are reviewed *de novo*. *In re Seven Seas Petroleum Inc*, 522 F3d 575, 583 (5th Cir 2008); see also Fed R Bankr P 8013. But matters within the discretion of a bankruptcy court are reviewed only for abuse of discretion. *In re Gandy*, 299 F3d 489, 494 (5th Cir 2002).

3

A bankruptcy court abuses its discretion when it applies an improper legal standard or bases its decision on clearly erroneous findings of fact. *In re Crager*, 691 F3d 671, 675 (5th Cir 2012). And on review of purported abuse of discretion, the district court "may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon" by the bankruptcy court. *In re Green Hills Development Co*, 741 F3d 651, 656 n 17 (5th Cir 2014) (citations omitted).

3.   Analysis

On appeal, the Executor argues that the bankruptcy court erred by determining that (i) the claim now brought against United Refining existed before the 1983 bankruptcy filing, (ii) the Decedent was given adequate notice of the need to file a claim in the 1983 bankruptcy case, and (iii) the claim was discharged by United Refining's reorganization plan. The Executor also argues that the court abused its discretion by (iv) deciding to reopen the long-closed bankruptcy case.

None of these is ultimately persuasive.

a.   Existence of prepetition claim

The Executor dedicates the better part of his brief to arguing that no cognizable *claim* existed as of 1983, when United Refining filed its bankruptcy petition. Dkt 8 at 10–26. It's undisputed that the Decedent was exposed to asbestos before the filing date. The primary question is whether that's enough for the claim that the Executor now asserts to be considered a prepetition claim, even though the Decedent's mesothelioma manifested itself decades later. If no claim existed prepetition, then neither the Bankruptcy Code nor the confirmation order will have discharged that claim, and it may proceed.

As a preliminary matter, the Executor suggests that the law to be applied in determining whether the Decedent had a prepetition claim is the law as it existed at the time of the bankruptcy filing in 1983. See Dkt 8 at 10–11. Neither the bankruptcy court nor United Refining directly address this contention. There is some support for it in the

4

caselaw, which notes due-process concerns arising from retroactive application of law. For example, see *In re Placid Oil Co*, 753 F3d 151, 154 n 1 (5th Cir 2014), citing *Wright v Owens Corning*, 679 F3d 101 (3d Cir 2012). But whether new or old law applies, it's clear that the Decedent had a dischargeable, prepetition claim—especially since the broad definition of *claim* in the Bankruptcy Code has remained constant throughout.

Section 101(5) of the Bankruptcy Code defines a *claim* as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." This same definition existed as of the 1983 bankruptcy filing, although then situated at Section 101(4).

The Code's definition of *claim* is of its nature quite broad, having replaced a much narrower one from the 1898 Bankruptcy Act, which the Code supplanted in 1978. See *In re Mooney Aircraft Inc*, 730 F2d 367, 375 n 6 (5th Cir 1984); see also *In re Johns-Manville Corp*, 57 BR 680, 686–88 (Bankr SDNY 1986) (noting that *claim* "must be expansively defined"). Courts have since formulated tests for determining whether certain tort claims meet the definition of *claim* under the Bankruptcy Code. These include (i) the accrual test, (ii) the fair-contemplation test, (iii) the conduct test, and (iv) the prepetition-relationship test. See *In re Placid Oil Co*, 463 BR 803, 814 (Bankr ND Tex 2012) (describing these tests), affd, 753 F3d 151.

The Executor primarily argues that either the accrual or the fair-contemplation test should apply, and that his wrongful-death claim doesn't qualify as a prepetition claim under either. Dkt 8 at 21–26. But neither of these governs in the Fifth Circuit—nor did they in the 1980s.

Under *the accrual test*, a claim accrues for bankruptcy purposes when it accrues under applicable non-bankruptcy law. The Executor argues that the subject wrongful-death claim didn't accrue under Pennsylvania law until the Decedent received his mesothelioma diagnosis, meaning further that the claim didn't exist prepetition and thus

5

wasn't discharged. Dkt 8 at 22. Even assuming that accurately states the law as to accrual of claims in Pennsylvania, the accrual test was adopted circuit-wide only in the Third Circuit and has since been overturned as in conflict with the Code's broad definition of claim. See *Matter of M. Frenville Co Inc*, 744 F2d 332 (3d Cir 1984), overruled by *In re Grossman's Inc*, 607 F3d 114 (3d Cir 2010). Regardless, decisions of the Third Circuit don't bind district courts in the Fifth Circuit.

Under *the fair-contemplation test*, for a claim to qualify as a prepetition claim, it must have been within the "fair contemplation" of the parties at the time of bankruptcy filing. *In re National Gypsum Co*, 139 BR 397, 406–08 (ND Tex 1992). The Executor argues that none of the available evidence suggests that either the Decedent or United Refining fairly contemplated the potential for future asbestos claims at the time of filing. See Dkt 8 at 12–14. The Bankruptcy Court determined otherwise, relying on the fact that the Decedent was a former employee of United Refining, and the confirmed plan addressed many environ-mental claims. See Dkt 2 at 885 n 7. But precise application of the fair-contemplation test is beside the point. For most pertinent here, the Fifth Circuit expressly stated over twenty years ago that it has "not adopted" the test. *In re Crystal Oil Co*, 158 F3d 291, 295–96 n 1 (5th Cir 1998). Argument by the Executor in favor of the fair-contemplation test is of no avail. See Dkt 8 at 25 (citing only *Crystal Oil* and several opinions from bankruptcy and district courts issued before *Crystal Oil*).

Neither of the remaining two tests favors the Executor's position.

Under *the conduct test*, a bankruptcy claim arises whenever the conduct prompting alleged liability occurs, even if injury doesn't manifest itself until after bankruptcy filing. *Grady v A.H. Robins Co Inc*, 839 F2d 198, 201–03 (4th Cir 1988). Given that the relevant conduct—exposure of the Decedent to asbestos—occurred before 1983, application of this test would make the Executor's a prepetition claim. But this isn't dispositive because the

Fifth Circuit follows (or has at least applied) a slightly modified version of this test, discussed next.

Under *the prepetition-relationship test*, the conduct test is narrowed somewhat by requiring "some prepetition relationship, such as contact, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant." *Lemelle v Universal Manufacturing Group*, 18 F3d 1268, 1277 (5th Cir 1994), quoting *In re Piper Aircraft Corp*, 162 BR 619, 627 (Bankr SD Fla 1994). In other words, "there must be evidence that would permit the debtor to identify, during the course of the bankruptcy proceedings, potential victims and thereby permit notice to these potential victims of the pendency of the proceedings." Ibid.

Applying this test in *Lemelle*, the Fifth Circuit determined that no relationship existed between the parties prepetition and thus neither did a dischargeable bankruptcy claim. The facts of record were key to this holding—and quite distinct from those here. Two children had died in 1985 after a mobile home manufactured in 1970 by a predecessor of defendant Universal Manufacturing caught fire. The mother of the children brought a wrongful-death suit related to the fire. Universal Manufacturing then sought summary judgment on account of a 1982 bankruptcy filing by the predecessor corporation, arguing that the mother's claim was discharged in bankruptcy. Id at 1271. The Fifth Circuit determined that a dischargeable claim didn't exist at the time of filing in part because "the injury and the manifestation of that injury occurred simultaneously," several years after the bankruptcy petition was filed. It further explained that there was no evidence indicating "when [the mother] and her family acquired th[e] mobile home or from whom they acquired it." Nor was there any evidence that the manufacturer "should have even known of [the mother's] and her family's existence." They were "completely unknown and unidentified" when the bankruptcy petition was filed. Id at 1277.

Not so here. The Decedent was employed by United Refining at one of its plants in the 1960s. He was exposed to asbestos during such employment. Even the Executor recognizes that United Refining was no doubt aware of the dangers of asbestos exposure by the time of its 1983 bankruptcy filing, with asbestos-related lawsuits against it and many others having been well underway by then. See Dkt 8 at 27–28. By virtue of his employment, then, the Decedent was neither unknown nor unidentifiable. And the conduct at issue—exposure to asbestos by United Refining—occurred prepetition. The Executor's claim thus existed prepetition, even though the Decedent's injury manifested itself post-petition.

Such a conclusion is also consistent with the definition of *claim* in Section 101(5), which, as set out above, includes a "right to payment" that can be "contingent." This express statutory definition governed in 1983 in the absence of any interpretative guidance from the Fifth Circuit. And as the bankruptcy court and many other courts have noted, the term *contingent* as used in the definition of *claim* is quite broad. See Dkt 2 at 885; see also *Grady*, 839 F2d at 202–03; *In re Phillips*, 175 BR 901, 907 (ED Tex 1994); *In re Manville Forest Products Corp*, 225 BR 862, 866–67 (SDNY 1998). For example, shortly after the Bankruptcy Code was enacted, one authoritative legal dictionary defined *contingent* this way: "Possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable." *Contingent*, Black's Law Dictionary (5th ed 1979). The Executor's present claim plainly meets that definition, as it depended upon the future uncertain event of the Decedent developing mesothelioma. The Fourth Circuit reached a similar conclusion in *Grady*, concluding that a claim regarding a Dalkon Shield installed prepetition that failed post-petition was "undoubtedly 'contingent,'" as it "depend[ed] upon a future uncertain event, that event being the manifestation of injury from use of the Dalkon Shield." 839 F2d at 202–03.

In perhaps his strongest argument against the above conclusion, the Executor suggests that all four tests are beside the point, given the definition of *claim* in the confirmed plan:

> "Claim" means any "claim," as defined in Section 101(4) of the Code, that (a) has been asserted against the Debtors, or any of them, and has not been withdrawn and is not a Disallowed Claim, and (b) was, except as otherwise provided in the Plan, in existence on or as of the Filing Date.

Dkt 8-3 at 4. The argument is that this definition drastically narrows the expansive definition of *claim* in the Bankruptcy Code and should be afforded its textual meaning. As thus applied, the Executor argues that even if the Decedent had a claim "in existence on or as of the Filing Date," he hadn't "asserted [it] against the Debtors" by that time, and as a result, the present wrongful-death claim didn't meet the plan's governing definition of *claim*. Dkt 8 at 23.

There's a procedural problem with the argument. The bankruptcy court doesn't appear to have addressed it, and indeed, there's no clear indication that the Executor even raised it. Typically, failure to brief an argument below results in forfeiture of the argument on appeal. See *In re ValuePart Inc*, 802 F Appx 143, 149 n 2 (2020); see also *Rollins v Home Depot USA*, 8 F4th 393, 397 (5th Cir 2021). But for its part, United Refining doesn't argue in response that the argument was forfeited. It instead responds only on the merits, briefly contending that it's impossible to determine whether the Decedent "asserted" a claim at this point because the bankruptcy record has been destroyed. Dkt 9 at 22.

The Court declines to address the argument in this posture. It's at least a plausible contention, but it isn't adequately briefed and may well have been forfeited. More appropriate is a limited remand for the bankruptcy court to determine whether the Executor forfeited the argument

and, if he didn't, to rule on that argument alone on whatever briefing it deems necessary.

Subject to the limited remand just described, the bankruptcy court didn't err by determining that the claim brought by the Executor existed prepetition.

b.   Notice

The Executor argues that United Refining failed to satisfy its notice obligations to the Decedent, and that the bankruptcy court erred in concluding otherwise. Dkt 8 at 31–34.

Section 523(a)(3)(A) of the Bankruptcy Code provides that, for a debt to be discharged that's neither listed nor scheduled in the restructuring plan, the creditor holding the debt must have "had notice or actual knowledge of the [bankruptcy] case in time for . . . timely filing" of a proof of claim. And due process requires that "notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314 (1950).

How much notice is required under the Due Process Clause depends on whether a creditor is known or unknown. Actual notice is required for known creditors; constructive notice is sufficient for unknown ones. *Placid Oil*, 752 F3d at 154–55. A creditor is *known* if he's actually known to the debtor or if his identity is "reasonably ascertainable"—meaning that it can be discovered through "reasonably diligent efforts." Id at 154, quoting *Tulsa Professional Collection Services Inc v Pope*, 485 US 478, 489–90 (1988).

The destruction in 2020 of the bulk of the underlying bankruptcy record complicates the notice issue here. But the bankruptcy court adequately explained that the only evidence from the bankruptcy record concerning notice favors United Refining. The confirmation order stated that United Refining "complied with the applicable notice provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Court, and notice of the hearing on

10

confirmation was reasonable and appropriate." Dkt 8-4 at 8 ¶ 1. Such an order is binding on all parties and has *res judicata* effect. See *Eubanks v FDIC*, 977 F2d 166, 170–71 (5th Cir 1992). The bankruptcy court was thus right to give full weight to the factual finding contained within it. Dkt 2 at 889. And that finding indicates that the Decedent was given appropriate notice, regardless of whether he was a known or unknown creditor. Put another way, it indicates that United Refining satisfied the bankruptcy court in the 1980s that it had provided such notice.

The Executor argues that he has submitted evidence that contradicts the finding contained in the confirmation order. Dkt 8 at 31–32. He cites the depositions of two co-workers of the Decedent, each of whom said they never received publication notice from United Refining. Dkt 2 at 815–18 (Lynn deposition), 844–45 (Hawks deposition). Even assuming the credibility of their recollection in this regard, this doesn't establish whether the Decedent himself received notice. And even if their views were pertinent to understanding the Decedent's own, both employees indicated in their depositions that they did in fact know of the bankruptcy, with one saying that he learned of it by "word of mouth." Id at 816, 844. The Fifth Circuit holds in this regard that "a creditor's actual knowledge of a bankruptcy case renders a claim dischargeable, even if the notice that the creditor received was deficient." *Salard v Salard*, 452 F Appx 588, 91 (5th Cir 2011) (citation omitted).

On the available record, the bankruptcy court didn't err by determining that the Decedent's estate had sufficient notice of the need to file a bankruptcy claim.

### c. Discharge

The Executor largely reiterates points made elsewhere in his brief to argue that his wrongful-death claim wasn't discharged by the confirmed plan or confirmation order, and that the bankruptcy court erred by concluding otherwise. Dkt 8 at 26–31.

11

The reorganization plan, confirmation order, and relevant provisions of the Bankruptcy Code all provide that dischargeable, prepetition debts are discharged, provided that proper notice is given. See Dkts 8-3 at 57–58 & 8-4 at 9–11; 11 USC §§ 523(a)(3)(A), 1141(d)(1)(A). It has already been determined that the asbestos claim at issue was a dischargeable, prepetition claim and that proper notice was given. The contention that the claim wasn't discharged is thus meritless.

The bankruptcy court didn't err by concluding that the plan and confirmation order discharged the claim now asserted by the Executor.

### d.  Reopening of closed case

The Executor last argues that the bankruptcy court abused its discretion by reopening United Refining's bankruptcy case. The merits of his other arguments so clearly favor him, he says, that reopening the bankruptcy case was futile. Dkt 8 at 34.

Section 350(b) of the Bankruptcy Code permits a bankruptcy court to reopen a case "to administer assets, to accord relief to the debtor or for other cause." "The phrase 'or other cause' . . . is a broad term" that confers discretion on a district court to reopen a case for good cause shown. *In re Case*, 937 F2d 1014, 1018 (5th Cir 1991). And a discharge order is appropriately enforced by the court that issued it. See *In re Crocker*, 941 F3d 206, 213–17 (5th Cir 2019).

The conclusions as to the foregoing issues on appeal demonstrate that it wasn't futile for the bankruptcy court to reopen United Refining's bankruptcy case. In doing so, the court appropriately determined, on the available briefing, that the claims brought by the Executor in Pennsylvania state court were discharged in 1988.

The bankruptcy court didn't abuse its discretion by reopening United Refining's bankruptcy case.

### 4.  Conclusion

On the briefing and record before it, the bankruptcy court didn't err by concluding that the wrongful-death

12

claim brought by Appellant Robert W. Dorrion existed prepetition and was discharged in bankruptcy following appropriate notice. Nor did it abuse its discretion by reopening the bankruptcy case of Appellee United Refining.

The judgment of the bankruptcy court is AFFIRMED subject to a LIMITED REMAND for the bankruptcy court (i) to determine whether the Executor forfeited his argument concerning the plan's definition of *claim*, and (ii) if he did not, to resolve the argument on whatever further briefing, if any, it deems appropriate.

SO ORDERED.

Signed on August 23, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge